**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 92-2631
_____

UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,


                    versus


GERMAN CRUZ, JOSE HELI-MEJIA
and DAVID RAMOS,

                              Defendants-Appellants.


_____

Appeals from the United States District Court
for the Southern District of Texas
_____


(May 18, 1994)


Before KING and WIENER, Circuit Judges, and DOHERTY,[*] District
Judge.

PER CURIAM:

     Defendants-Appellants David Ramos, Jose Heli-Mejia, and German

Cruz appeal their convictions for conspiracy to possess with intent

to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1),

(b)(1)(A), 846; and aiding and abetting the possession with intent

to distribute cocaine in violation of 21 U.S.C. § 841(a)(1),

_____

     [*]District Judge of the Western District of Louisiana,
sitting by designation.

(b)(1)(A), and 18 U.S.C. § 2.  After carefully considering the facts and legal arguments advanced by counsel in their briefs to this court and in their oral arguments to this panel, and having reviewed the record from the district court, we conclude that the majority of the cited points of error[1])while not necessarily frivolous))lack sufficient factual and legal substance to justify reversal of Defendants-Appellants' convictions.  Whether Cruz's right to counsel was violated, however, merits more discussion. We, therefore, confine our factual review and legal analysis in this opinion to that issue.

I.

FACTS AND PROCEEDINGS

Cruz was arrested by Drug Enforcement Administration (DEA) agents after an indictment was returned charging him with complicity in a cocaine conspiracy.  Cruz was promptly given *Miranda*[2] warnings; however, as Cruz was not proficient in English, the agents employed Cruz's wife as an interpreter.  Cruz had no questions and did not request an attorney.  Cruz was taken to

---

[1]Cruz, Ramos, and Heli-Mejia all challenge the sufficiency of the evidence.  Cruz challenges the admission of certain inculpatory statements as violative of his Fifth and Sixth Amendment rights to counsel.  Cruz also challenges the district court's refusal to declare a mistrial on the basis of testimony elicited from a government agent on cross-examination.  Ramos challenges the restriction of the scope of his cross-examination. Heli-Mejia challenges the denial of his requests for disclosure of evidence held by the government, and the district court's finding that he was a manager or supervisor of criminal activity for purposes of the sentencing guidelines.  Both Ramos and Heli-Mejia challenge the admittance of evidence of extraneous acts.

[2]384 U.S. 436 (1966).

2

another location where several agents had left their vehicles. A Spanish-speaking officer then repeated the *Miranda* warnings in Spanish. Cruz was asked if he understood the warnings and replied that he did. Cruz was then asked if he had a lawyer. Cruz replied that he was a "working man" and "couldn't afford an attorney." The agents then proceeded to conduct a cursory interrogation. Shortly thereafter, Cruz was transported to the DEA field office and again was given *Miranda* warnings in Spanish. Cruz indicated that he understood his rights, but he did not request counsel. DEA agents then questioned Cruz for twenty minutes. In response to their questions, Cruz gave several inculpatory statements to the agents.

Later that day, Cruz was arraigned, at which time he requested the appointment of counsel. With benefit of counsel, Cruz moved to suppress his inculpatory statements on the grounds that he had invoked his right to counsel when he stated that he was a "working man" and "couldn't afford an attorney." Cruz argued that, as he had not waived his right to counsel at any time after making those comments, his statements to the DEA agents should be suppressed as the product of improper questioning.[3] The district court rejected Cruz's motion, reasoning, in part, that Cruz's comments were not "a positive affirmation of the right to counsel." At trial, the government introduced the inculpatory statements into evidence. The jury convicted Cruz, and he timely filed a notice of appeal.

II.

---

[3]Neither party disputes the words spoken by Cruz. The only dispute is the effect to be given to those words.

3

ANALYSIS

"An accused in custody, `having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him,' unless he validly waives his earlier request for the assistance of counsel."[4]  "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the [accused] knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel."[5]  "[A] valid waiver of that right cannot be established by showing only that [the accused] responded to further police-initiated custodial interrogation even if [the accused] has been advised of his rights."[6]

Cruz contends that he invoked his right to counsel, thus rendering the fruits of subsequent questioning inadmissible, when he stated that he was a "working man" and "couldn't afford an

---

[4]*Smith v. Illinois*, 469 U.S. 91, 94-95 (1984) (quoting *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981)); *accord Miranda v. Arizona*, 384 U.S. 436, 474 (1966); *United States v. Cherry*, 733 F.2d 1124, 1130 (5th Cir. 1984).

[5]*Miranda*, 384 U.S. at 75.

[6]*Edwards*, 451 U.S. at 484; *see Smith*, 469 U.S. at 95 ("This `rigid' prophylactic rule embodies two distinct inquiries. First, courts must determine whether the accused actually invoked his right to counsel.  Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." (citations omitted)).

4

attorney."[7]   But   "[t]he   word   `attorney'   has   no   talismanic qualities.   A defendant does not invoke his right to counsel any time the word falls from his lips."[8]   Viewing Cruz's comments in context of the officer's question and giving his words their ordinary meaning, Cruz did not evince "a desire to deal with the police only though counsel."[9]

Given the officer's inquiry whether Cruz had a lawyer, his response could only be construed as a statement of fact))equivalent to, "No, I don't have an attorney."[10]   Cruz's response could not

---

[7]Cruz had both a Fifth Amendment and Sixth Amendment right to counsel.   The Fifth Amendment right to counsel arises when, as here, an individual is subject to custodial interrogation. *Edwards*, 451 U.S. at 482; *Miranda*, 384 U.S. at 470; *United States v. Berisha*, 925 F.2d 791, 797 (5th Cir. 1991).   The Sixth Amendment right to counsel attaches upon the initiation of judicial proceedings against an individual.   *See Michigan v. Jackson*, 475 U.S. 625, 629 (1986); *Brewer v. Williams*, 430 U.S. 387, 398 (1977).   Cruz was under indictment at the time that he was questioned, so his Sixth Amendment right to counsel had attached.   *See Patterson v. Illinois*, 487 U.S. 285, 290 (1988).

[8]*United States v. Jardina*, 747 F.2d 945, 949 (5th Cir. 1984), *cert. denied*, 470 U.S. 1058 (1985); *accord Thompson v. Wainwright*, 601 F.2d 768, 772 (5th Cir. 1979); *Nash v. Estelle*, 597 F.2d 513, 519 (5th Cir.) (en banc), *cert. denied*, 444 U.S. 981 (1979).

[9]*Edwards*, 451 U.S. at 484.   "[W]hile an accused is not required to use any magic language to invoke the right to counsel, we do not ignore the plain meaning of his words in order to find invocation of the right to counsel." *Griffin v. Lynaugh*, 823 F.2d 856, 863 n.3 (5th Cir. 1987), *cert. denied*, 484 U.S. 1079 (1988).

[10]Cruz contends his comments were made in response to the *Miranda* warnings; however, the uncontested testimony at the suppression hearing establishes that his comments were made in response to an inquiry whether he had a lawyer.   Under cross-examination, the officer giving the *Miranda* warnings testified: "Well, during when I was reading the Miranda warning to him, at that time I asked him if he had a lawyer, and he answered back that, no, he didn't have a lawyer."   Later the officer clarified not

5

reasonably be construed as a request for counsel.[11]  We are satisfied that, under the instant circumstances, Cruz did not evince a desire for counsel; and, as there is no suggestion that his subsequent statements were involuntary, we conclude that the district court did not err in denying the motion to suppress on the basis of Cruz's statement that he was a working man who could not afford an attorney.

Cruz nevertheless argues in the alternative that his response was at least an ambiguous or equivocal request for counsel, thereby limiting further questioning to a clarification of his desires.  In *United States v. Cherry*[12] we reaffirmed the principle that, when an accused expresses an ambiguous or equivocal request for counsel, further interrogation is limited to clarification of the accused's desires.[13]  Here, though, we find no ambiguity or equivocation in Cruz's response:  He had been asked not if he *wanted* a lawyer, but if he *had* one; and he answered that question in the negative.  That answer can not be stretched to constitute an unresponsive request

---

this testimony:  "I remember him also telling me in Spanish when I asked him about if he had an attorney or whatever, and he said, `No.'  He said he was just a working man.  He couldn't afford an attorney."

[11]A different case would have been presented had the officer asked Cruz whether he *wanted* a lawyer.  Given such a context, Cruz's response would arguably have been an ambiguous or equivocal request.  However, we are not presented with such facts.

[12]733 F.2d 1124 (5th Cir. 1984).

[13]*See id.* at 1130-31; *accord Thompson v. Wainwright*, 601 F.2d 768, 771-72 (5th Cir. 1979); *Nash v. Estelle*, 597 F.2d 513, 517-18 (5th Cir. 1979) (en banc), *cert. denied*, 444 U.S. 981 (1979).

for counsel, even an ambiguous or equivocal one.

This case is thus unlike prior cases in which we found an equivocal or ambiguous request for counsel. For example, in *Cherry*, the accused stated, "Maybe I should talk to an attorney before I make a further statement," then added rhetorically, "Why should I not get an attorney?"[14] We found that, as the accused's statements suggested conflicting desires to talk to an attorney and to talk to the authorities, his utterances constituted a request, albeit an equivocal one.[15] Unlike the comments in *Cherry*, though, Cruz's comments did not suggest a desire for counsel; to the contrary, they unambiguously and unequivocally stated a matter of fact. Hence, as Cruz's comments could not be construed as an ambiguous or equivocal request, subsequent questioning was not limited to mere clarification of his desires. Denial of the motion to suppress was not error.

III.

CONCLUSION

Having found no reversible error as to any of the Defendants-Appellants' assignments of error, their convictions and sentences are in all respects

AFFIRMED.

---

[14]*Cherry*, 733 F.2d at 1127.

[15]*See id.* at 1130. Likewise, in *Thompson v. Wainwright*, 601 F.2d at 769, and *Nash v. Estelle*, 597 F.2d at 516-17, the accused expressed both a desire to talk to authorities and a desire to talk to an attorney.