United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 1, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 06-20396
(Summary Calendar)
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee

versus

ERIC EARL CRAFT,

Defendant-Appellant

----------------------
Appeal from the United States District Court
for the Southern District of Texas
(4:04-CR-442-13)
----------------------

Before SMITH, WIENER and OWEN, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Eric Earl Craft appeals his conviction by a jury on multiple counts of conspiracy and aiding and abetting in the unlawful distribution of controlled substances, money laundering promotion and concealment, and voluntary transactions in property derived from specified unlawful activities, all in connection with or arising from the operations of a large and lengthy prescription drug ring in Houston, Texas. Involved were a physician, several pharmacists, and numerous associates. Craft's

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

appeal of his conviction focuses entirely on the contention that his Fifth Amendment rights against self-incrimination —— specifically, his right not to testify and not to have the jury infer anything negative therefrom —— were violated when one among numerous cooperating government witnesses answered a question posed on cross examination in a way that could have been taken by the jury as implicating Craft's eventual failure to testify. Further, the asking of that question by defense counsel and counsel's failure to object and to seek a mistrial following the witness's response underpin Craft's second claim on appeal, ineffective assistance of counsel. Concluding that the witness's response to defense counsel's question on cross examination, in context and in light of the totality of the circumstances of the trial and all the evidence, does not rise to the level of reversible error or constitute actionable ineffective assistance of counsel, we affirm.

## I. Facts and Proceedings

After Craft was successful in obtaining a trial severance, his case was heard by a jury. The trial lasted seven days, during which the government adduced massive documentary and testimonial evidence of the multi-year prescription drug conspiracy and Craft's substantial role in it, viz., obtaining large numbers of bogus prescriptions, purchasing the controlled substances prescribed from co-conspirator pharmacists, and distributing huge quantities through illicit sales to his "customers." In the course of the

government's case, the prosecution adduced extensive testimony from, inter alia, (1) Callie Herpin, M.D., the principal physician in the conspiracy, who testified that Craft was among the largest purchasers of fraudulent prescriptions written by her; (2) Etta Mae Williams, Dr. Herpin's office manager, who also testified about Craft's role as a substantial purchaser of prescriptions written by Dr. Herpin; and (3) Darryl Armstrong, a pharmacist who testified about filling Herpin's prescriptions for Craft and about Craft's interaction with Armstrong and others. It suffices that the combined testimony of Herpin, Williams, and Armstrong — augmented by considerable documentary evidence and testimony from other witnesses — constructed a case against Craft that is only trivialized by referring to it as overwhelming.

It is against that backdrop and context that Craft complains about the answer given by Armstrong to a question posed by Craft's attorney during cross examination. In an apparent effort either to impeach Armstrong or weaken the probative value of his adverse testimony — or possibly set the stage for favorable testimony by subsequent witnesses — Craft's counsel posed the following questions and Armstrong provided the following answers:

Q. So — and wouldn't you agree with me that the only person that could corroborate what you said about these conversations with John Wiley and Paul Henry and Mr. Craft is you?

A. No, sir.

3

Q.   No?

A.   Mr. Craft could.

Q.   Mr. Craft and who else?

A.   John Wiley, Sir.

Q.   John Wiley.  And how about Paul Henry?

A.   Paul Henry, yes, Sir.

Q.   So they would be good witnesses, wouldn't they, to what
     they saw and heard; right?

A.   Yes.  All three of them, yes, Sir.

Even though Mr. Armstrong's answers do not expressly or directly comment on the defendant's eventual failure to testify, and contain no pejorative comment about that, there is no question that, given Mr. Armstrong's identification of Mr. Craft as one who could corroborate or dispute the conversation at issue and Mr. Craft's ultimate failure to take the stand, this was at least implicitly a comment on such failure.  And we speculate that, given a chance, defense counsel, with hindsight, would likely rephrase the question in a way that only Mr. Wiley and Mr. Henry — and not Mr. Craft — could be identified by Armstrong as potential corroborators.

In that context we further observe that counsel's question and Armstrong's response occurred in the course of a lengthy and continuing cross examination.  Counsel's failure to object likely served to downplay any untoward implication from Craft's eventual failure to take the stand.  Likewise, counsel's continuing the flow

4

of questioning without objecting to Armstrong's answer, and following it with references to Wiley and Henry, likely minimized any possible negative effect, and possibly prevented recognition by the jury of the implication of Craft's remaining silent. Thus, among other things, counsel's failing to object and proceeding without interruption could well have been an intentional tactic to keep any effect of Armstrong's answer below the jury's radar.

Furthermore, the able and experienced district judge who conducted the trial correctly instructed the jury, at the end of trial and thus well after Armstrong's response, that "no inference whatsoever may be drawn from the election of a defendant not to testify." And, finally, the absence of objection establishes our standard of review on appeal as plain error; not only that, but also "invited error" inasmuch as the inference in Armstrong's answer was in response to a question posed by defense counsel. We review invited error for manifest injustice.[1] Similarly, when we review for plain error, we must find that there is an error that is plain and obvious and that affects the defendant's substantial rights.[2] Moreover, even when we find these elements present, we do not exercise our discretion to correct such error unless it

---

[1] United States v. Solis, 299 F.3d 420, 452 (5th Cir. 2002)(quoting United States v. Green, 272 F.3d 748, 754 (5th Cir. 2001)).

[2] United States v. Olano, 507 U.S. 725, 732 (1993).

"seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings."[3]

## II. Analysis

Having carefully reviewed the trial record in this case, particularly the exchange between Armstrong and defense counsel, the instructions to the jury, and all the testimony and documentary evidence adduced by the government, we are satisfied beyond cavil that any implication conceivably recognized by the jury regarding Craft's failure to testify is <u>de</u> <u>minimis</u> in the absolute, and completely harmless in the context of all the facts and circumstances. The incident complained of does not approach the level of manifest injustice. Any possible effect that Armstrong's answer could have had on the jury, which observed the demeanor of all the government's witnesses, heard all that they had to say, and weighed all the evidence against Craft, eschews any possibility of contributing to the guilty verdict in any meaningful way. In sum, the error complained of by Craft constitutes no reversible error, whether plain or otherwise.

As noted, Craft also asks us to reverse his conviction and grant a new trial on the basis of ineffective assistance of counsel. And, also as noted, his assertion is grounded in (1) the question his defense counsel posed to Armstrong, which opened the door and invited Armstrong to identify Craft as one who could ——

---

[3] <u>Id.</u> (Internal citations and quotations omitted).

6

but ultimately did not —— corroborate the discussions at issue, and (2) counsel's failure to object to that answer and seek a mistrial.

As the government has acknowledged in its brief on appeal, we seldom "entertain ineffective assistance of counsel claims on direct appeal when they have not been raised before the trial court, as the trial court is the proper place to develop the record necessary for their resolution."[4]  Nevertheless, Craft's claim on appeal that his counsel was thus ineffective places this case in the small minority of those in which such a claim may be disposed of on direct appeal without requiring that it be considered first by the district court or await habeas review.

We consider claims of ineffective representation of counsel, in violation of the Sixth Amendment under the oft-repeated rubric of Strickland v. Washington[5]:  The complaining defendant has the burden of proving both prongs of the Strickland test, viz., (1) that counsel's performance was deficient when measured against the level of performance expected of competent criminal defense counsel, and (2) that the deficiency was so extreme as to produce prejudice and thereby deprive the defendant of a fair trial.[6]  Not only must Craft overcome the Strickland presumption that his

---

[4] United States v. Palmer, 122 F.3d 215, 221 (5th Cir. 1997); see also United States v. Higdon, 832 F.2d 312, 313-14 (5th Cir. 1987) cert. denied, 484 U.S. 1075 (1988).

[5] 466 U.S. 668 (1984).

[6] Id. at 686.

attorney performed within a broad range of reasonable assistance, but he must also show a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[7]

Based on essentially the same considerations that led us to determine that counsel's question and Armstrong's response did not rise to the level of manifest injustice or seriously affect the fairness, integrity, or public reputation of these proceedings, we also reject Craft's claim of ineffective assistance of counsel. As the two-pronged test of Strickland is conjunctive, Craft's failure to bear his burden on either prong is fatal. In the interest of brevity, therefore, we assume without granting that counsel's performance was deficient and proceed to test such presumed deficiency for prejudice.

At the risk of redundancy, we reiterate that in Armstrong's response to counsel's question, who could corroborate Armstrong's testimony about certain conversations, he identified Craft as one who could. In an obvious effort to minimize any possible damage from the implications of that unexpected response, counsel moved right along and elicited names of two others who could so testify. Counsel's election to refrain from objecting contemporaneously avoided highlighting and overemphasizing possible implications of

---

[7] Id. at 694.

Armstrong's answer in the Fifth Amendment context; and the district court's instructions at the end of the trial, remote as it was from Armstrong's testimony, left the jury with the rule fresh in mind that no inference could be made from Craft's failure to testify. Although the unfortunate answer on cross produced error vel non, the enormity of the prosecution's case against Craft bars any possible conclusion of prejudice. Even if we were to assume that the jury was able to connect the dots, recognize that Armstrong's response to counsel's question somehow implicated Craft's ultimate failure to take the stand, and read anything negative into that, it would have so paled in comparison to the overwhelming evidence against Craft as to be insusceptible of rising to the level of Strickland prejudice. This plenteous record convinces us that Craft was not prejudiced by his counsel's performance.

### III. Conclusion

We hold that any inferences the jury might have drawn from Armstrong's response to counsel's question fall far short of manifest injustice and could not have seriously affected the fairness, integrity, or public reputation of Craft's trial. Neither was his attorney's performance prejudicial to Craft in the sense of Strickland and thus did not deprive him of his Sixth Amendment right to effective counsel. We reject Craft's contentions that the implied comment of Armstrong's response on the failure to testify or his lawyer's failure to object and seek a

mistrial entitle him to a reversal of his conviction and a new trial.  Accordingly, Craft's conviction and sentence are, in all respects,

AFFIRMED.