**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 11, 2013

No. 13-40033

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DOLPH FINLEY,

Defendant - Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:12-CR-181-1

Before REAVLEY, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

A jury convicted Defendant-Appellant Dolph Finley of conspiracy to possess with intent to distribute less than 50 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D), and 846, and possession with intent to distribute less than 50 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D), and 18 U.S.C. § 2. The district court sentenced Finley to thirty-eight months of imprisonment to be followed by three years of supervised release. Finley appeals his conviction, arguing that the district court erred in

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-40033

denying his motion to suppress and in overruling his jury selection challenge. Finley also appeals his sentence on the basis that the district court erred in finding both that he committed a prior drug trafficking offense and that the offense is relevant conduct under U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 1B1.3(a)(2) (2012).  We AFFIRM.

## I.  Factual and Procedural History

In February 2012, Finley and codefendant Thomas Lubecke left Baton Rouge, Louisiana, in a rental car and drove to Brownsville, Texas.  The purpose of their trip was to purchase marijuana for resale from contacts Finley had previously established in Brownsville.  On the return,  Finley boarded  a bus, concealing the contraband in an All-Star gym bag, while Lubecke followed behind in the rental car.

After the bus passed through a border checkpoint, a drug dog alerted to Lubecke's rental car.  The subsequent search of the car revealed personal-use amounts of drugs, some of the materials used to conceal the marijuana, and a black All Star duffle bag identical to the one used to transport the marijuana. Because a Border Patrol agent recalled seeing the other black All Star duffle bag in the luggage area of the passenger bus, Border Patrol agents stopped the bus a second time.  This time, a drug dog alerted to the bag, and a search revealed the marijuana.  The agents also discovered Finley trying to dispose of the luggage receipt corresponding to the bag in the bathroom of the bus.  Given Finley's inculpatory actions and the discovery of the drugs, the agents arrested Finley.

After his arrest, Border Patrol agents read Finley his *Miranda* rights, and Finley invoked his right to counsel.  Later that day, Drug Enforcement Administration ("DEA") agents arrived to interview Finley.  One of the agents, Agent Cervantes, recognized Finley from an earlier drug trafficking arrest at the Sarita Border Patrol checkpoint.  After Finley was removed from his holding cell

2

No. 13-40033

and taken to an office for an interview, Agent Cervantes made eye contact with Finley and asked him, "do you remember me?" Finley answered affirmatively, and the two began a conversation during which Finley denied involvement in the events under investigation. At trial, Finley moved to suppress the statements made during this conversation. The district court denied the motion, and the prosecutor introduced the conversation as evidence of Finley's guilt.

A jury ultimately convicted Finley of the charged offenses, and Finley's case proceeded to sentencing. The Presentence Investigation Report ("PSR") included in the Guidelines calculation marijuana and ecstasy discovered during an unadjudicated March 2011 arrest of Finley. Finley objected to the inclusion of these drugs in the Guidelines calculation, but the district court overruled the objection, finding that Finley committed the March 2011 offense and that it qualified as relevant conduct under § 1B1.3(a)(2) of the Guidelines.

## II.  Motion to Suppress Statements

Finley argues on appeal that the statements of denial that he made on the day of his arrest should have been excluded under *Edwards v. Arizona*, 451 U.S. 477 (1981), which prohibits continued interrogation after invocation of the right to counsel "unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* at 484–85. Following a hearing, the district court found that the agents did not violate *Edwards* because Finley "initiated the communication about the offense or investigation . . . before he was asked any questions about the investigation." The district court therefore denied Finley's motion to suppress.

We review *de novo* the legal conclusions underlying a district court's denial of a motion to suppress and review for clear error a district court's factual findings. *United States v. Gonzalez-Garcia*, 708 F.3d 682, 685 (5th Cir. 2013). Any error is subject to harmless error review. *United States v. Green*, 272 F.3d 748, 756 (5th Cir. 2001). An error is harmless only if we can determine beyond

3

a reasonable doubt that the improper testimony did not contribute to the jury's verdict. *Id.*

We need not decide whether the district court erred in admitting Finley's statements, because the error was harmless. Even without the challenged statements, there was overwhelming evidence of Finley's guilt presented at trial. The jury listened to extensive testimony by Lubecke that he and Finley planned and carried out the purchase and transport of marijuana from Brownsville using a rental car, a passenger bus, a black All Star duffle bag, and marijuana packaging materials (black plastic sheeting, coffee, dryer sheets, and axle grease). The jury reviewed video, photographic, and documentary evidence which indicated that Finley and Lubecke purchased the marijuana packaging materials and two black All Star duffle bags from Brownsville stores. There was also documentary evidence that Finley and Lubecke purchased bus tickets together. The jury heard testimony from a Brownsville Metro employee regarding surveillance video footage of Finley and Lubecke purchasing bus tickets together, Finley placing a black All Star duffle bag in the luggage compartment of the bus, and Finley boarding the bus, as well as testimony from Border Patrol agents about Finley's inculpatory conduct at the time of the stop. The jury also reviewed cellular telephone records showing Finley and Lubecke in contact by telephone and text message while Finley was traveling on the bus, including a text message asking Finley what highway the bus was traveling on.

The overwhelming nature of the evidence leaves no doubt as to Finley's guilt. *See United States v. Vejar-Urias*, 165 F.3d 337, 340 (5th Cir. 1999) ("[E]rror may be considered harmless when, disregarding the [challenged evidence], there is otherwise ample evidence against a defendant." (citation and internal quotation marks omitted)). In comparison, Finley's statements of denial to the DEA agents were insignificant: their falsity and inculpatory nature is realized only if the jurors first believe the other evidence of Finley's guilt. *See*

No. 13-40033

*United States v. Basey*, 816 F.2d 980, 1005 (5th Cir. 1987) ("[E]rror may be harmless if the [improper] statement's impact is insignificant in light of the weight of other evidence against the defendant." (citing *Schneble v. Florida*, 405 U.S. 427, 430 (1972))). The "verdict rendered was surely unattributable to the" statements. *Green*, 272 F.3d at 756.[1] Therefore, any potential error in admitting Finley's statements was harmless.

### III. *Batson* Challenge

Finley challenges as racially based the peremptory strike of a juror in his case. "The Due Process clause of the Fifth Amendment prohibits the use of peremptory strikes on the basis of race." *United States v. Davis*, 393 F.3d 540, 544 (5th Cir. 2004) (citing, *inter alia*, *Batson v. Kentucky*, 476 U.S. 79, 84 (1986)). We review a district court's *Batson* ruling for clear error. *United States v. Kennedy*, 707 F.3d 558, 568 (5th Cir.), *cert. denied*, 133 S. Ct. 2785 (2013).

During *voir dire*, the prosecutor asked prospective jurors who had raised their numbered cards in support of legalization of marijuana for medicinal purposes to "leave your card up if you think it should just be legalized period." At this point, potential Jurors 5 and 18 were the only potential jurors to leave their cards raised. The prosecutor then engaged in follow-up questioning of Jurors 5 and 18 on this topic, during which both expressed their belief that marijuana was less "severe," "harmful," or "evil" than other drugs. The prosecutor used peremptory strikes on both Jurors 5 and 18.

At the conclusion of jury selection, Finley raised a *Batson* challenge to the prosecutor's use of a peremptory strike against potential Juror 5—the only African-American on the venire. The district court denied the challenge.

---

[1] Finley's comparison to *Green* is misplaced. Unlike in *Green*, where the challenged statements were "the only direct evidence of [the defendant's] knowledge of and access to the firearms charged in the indictment," 272 F.3d at 757, Finley's statements were not necessary to prove any element of the offenses.

No. 13-40033

Although Finley argues that the prosecutor engaged in disparate questioning of Juror 5 in a manner that would tend to prompt responses that would justify striking Juror 5 and that the prosecutor's proffered reason for striking Juror 5 was a pretext for racial discrimination, the record supports neither of these arguments.   In short, Finley failed to meet his burden of demonstrating purposeful discrimination.  We perceive no error in the district court's ruling.

IV.  Finley's Prior Arrest as Relevant Conduct

The district court increased Finley's sentence based on evidence that he had previously possessed drugs in March of 2011.[2]  Finley appeals the district court's sentencing  calculation on two grounds: (1) there was an insufficient evidentiary basis to conclude that he committed the March 2011 offense, and (2) the March 2011 offense was not relevant conduct under § 1B1.3(a)(2) of the Guidelines because it was not part of the same course of conduct or common scheme or plan as the instant offense of conviction.   A district court's determination that unadjudicated conduct is relevant conduct under the Guidelines is a factual finding that we review for clear error.  *United States v. Rhine*, 583 F.3d 878, 884–85 (5th Cir. 2009).

*A.  Applicable Legal Standards*

In calculating the amount of drugs involved in an offense, a district court may consider uncharged conduct so long as it constitutes "relevant conduct" under the Guidelines.  *See* U.S.S.G. §§ 1B1.3(a)(2), 3D1.2(d).  Relevant conduct includes "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction."   § 1B1.3(a)(2). "'Common scheme or plan' and 'same course of conduct' are two closely-related

---

[2] The case stemming from Finley's March 2011 arrest was dismissed.

concepts." § 1B1.3(a)(2) cmt. n.9. "Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." § 1B1.3 cmt. n.9(B); *see also Williams*, 610 F.3d at 293.

*B. Finding that Finley Committed the March 2011 Offense*

At Finley's sentencing hearing, the evidence before the district court included the testimony of Agent Cervantes, the DEA agent assigned to the investigation of Finley's March 2011 and the PSR, which included similar information about the March 2011 arrest. Additionally, the PSR included statements made by Lubecke that in late 2011, Finley informed him that he had previously made multiple trips to South Texas to buy marijuana to sell in Louisiana and that he had contacts in Brownsville from whom they could purchase drugs.

Furthermore, the district court had before it the evidence adduced at trial to prove the February 2012 offenses that Finley was convicted of. This included evidence that in February 2012, Finley made a trip with Lubecke in a rental car from Baton Rouge, Louisiana, to Brownsville, Texas, during which they purchased marijuana and tried to transport it back north through the Sarita Border Patrol checkpoint in order to sell it. The same type of trip was involved in the March 2011 offense.

Based on the foregoing evidence, the district court specifically found that Finley committed the March 2011 offense. Consequently, Finley's argument that the district court erred by reaching its conclusion based on the "mere fact of arrest alone" is unavailing. The evidence considered by the district court went well beyond the mere fact of Finley's arrest. *See United States v. Harris*, 702 F.3d 226, 230 n.1 (5th Cir. 2012) ("Because [the] PSR included the factual

No. 13-40033

underpinnings for the prior unadjudicated arrests—not merely the fact that [the defendant] had been arrested, but not convicted, for an offense—this case does not involve improper reliance on the mere fact of prior arrests."), *cert. denied*, 133 S. Ct. 1845 (2013); *United States v. Jones*, 444 F.3d 430, 434 (5th Cir. 2006) (noting that while an arrest alone may not be considered, a court may consider a prior offense after making a finding, supported by evidence, that the defendant committed the offense).

Finley argues that because the drugs were in a "hidden compartment" there was insufficient evidence to support the "knowledge" element of the prior offense. *See United States v. Mendoza,* 522 F.3d 482, 489 (5th Cir. 2008). In *Mendoza,* which involved a conviction based upon a "beyond a reasonable doubt" burden of proof, we explained that, in a hidden compartment situation, we traditionally require other circumstantial evidence "that is suspicious in nature or demonstrates guilty knowledge." *Id.* (citation and internal quotation marks omitted). We need not resolve the open question of whether *Mendoza* applies equally to a sentencing proceeding where the burden of proof is preponderance of the evidence because the evidence underlying the district court's finding is sufficient even under *Mendoza.* We conclude that there was sufficient circumstantial evidence beyond the drugs found in the hidden compartment such that the district court did not clearly err in finding that Finley committed the March 2011 offense.

## C. Relevant Conduct Due to Same Course of Conduct[3]

---

[3] Relevant conduct is defined as including acts that are either "part of the same course of conduct" as the offense of conviction or part of a "common scheme or plan" as the offense of conviction. § 1B1.3(a)(2). The district court did not specify through which avenue it reached its relevant conduct finding. Because we determine it is plausible to find the two incidents in question were part of the same course of conduct, we do not address whether they might also be considered part of a common scheme or plan.

Offenses may "qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." § 1B1.3 cmt. n.9(B). Factors bearing on this determination include "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." *Id.* Here, all three factors weigh in favor of the district court's finding that the March 2011 offense is part of the same course of conduct as the offense of conviction.

"To determine whether a defendant's earlier conduct is sufficiently similar to the offense of conviction, we inquire whether 'there are distinctive similarities between the offense of conviction and the remote conduct that signal that they are part of a course of conduct rather than isolated, unrelated events that happen only to be similar in kind.'" *Rhine*, 583 F.3d at 888 (quoting *United States v. Culverhouse*, 507 F.3d 888, 896 (5th Cir. 2007)). In this case, there are multiple distinct similarities between the two offenses. First, the offenses themselves are the same—conspiracy to possess with intent to distribute a controlled substance. Both offenses began with renting a car from Enterprise Rent-A-Car in Baton Rouge, Louisiana. In addition, both involved Finley traveling with an accomplice to Brownsville, Texas, where the two spent a single night at a hotel. Also in both offenses, after a one-day stay in Brownsville, Finley and the accomplice then began transporting drugs north through the Sarita Border Patrol checkpoint. The amount of drugs in both offenses was greater than a personal-use amount—5.44 kilograms of marijuana and 18.7 grams of ecstasy in the first incident and 16.8 kilograms of marijuana in the second incident. Furthermore, the fact that the drugs were acquired in South Texas in both incidents and that Finley informed Lubecke that he had a supplier in South Texas suggests that the drugs shared a common source or supplier. *Cf. United States v. Bryant*, 991 F.2d 171, 177 (5th Cir. 1993) (finding district court

did not err in concluding that drugs were part of defendant's "on-going drug trafficking operations" after noting, *inter alia*, that the drugs were mailed from California and the defendant stated that his regular drug supplier was located in Los Angeles). Thus, the distinct similarities between the two offenses here suggest that they are part of the same course of conduct.[4]

When considering the regularity factor, we "inquire whether there is evidence of a regular, i.e., repeated, pattern of similar unlawful conduct directly linking the purported relevant conduct and the offense of conviction." *Rhine*, 583 F.3d at 889–90. The facts in this case suggest that Finley repeatedly traveled to South Texas, purchased drugs there, and transported them north, and that the March 2011 and February 2012 offenses were part of this regular pattern of activity. Finley's statement to Lubecke that he made "multiple trips" to South Texas to purchase drugs is strong evidence that he did just that.[5] The March

---

[4] The cases cited by Finley to show otherwise are distinguishable because the offenses in those cases shared much fewer similarities than are present here. *See Rhine*, 583 F.3d at 889 (concluding that similarity was lacking due to "significant" differences, including quantities, methods of distribution, participants, nature of the transactions, and the defendant's role in the transactions, as well as the fact that there was no evidence that the drugs came from a "common source, supplier, or destination"); *United States v. Wall*, 180 F.3d 641, 646 (5th Cir. 1999) (concluding that there were "significant differences" between the two offenses: there was no evidence that the drugs "shared a common source, supplier, or destination"; an accomplice was used in one incident, but not the other; and one incident involved "large loads of marijuana secreted in the wheels and gas tank of two pick-up trucks driven across the border," while the other incident involved a "much smaller" load hidden in a car).

[5] Finley's reliance on *Rhine*, 583 F.3d at 890–91, to suggest that his statements to Lubecke are little evidence of regularity, because the "multiple trips" *may* have occurred prior to the March 2011 offense, is misplaced. In *Rhine*, we concluded that regularity was lacking because there was not "even a scintilla of evidence" that the defendant engaged in the sale of drugs between the two offenses in question. 583 F.3d at 890. We noted that conduct occurring prior to both the purported relevant conduct and the offense of conviction usually carries questionable persuasive value. *Id.* at 890–91. However, we recognized that "there may be the rare case in which a prior conviction or prior activity informs this analysis by establishing a direct link, i.e., a pattern of regularity or repetition, between the purported relevant conduct and the offense of conviction (e.g., if a specific 'course of conduct' began before the 'relevant

No. 13-40033

2011 offense appears to be one of the trips to which Finley referred. The February 2012 offense was another such trip—a continuation of this pattern of activity. Because there is "evidence of a regular, i.e., repeated, pattern of similar unlawful conduct directly linking the purported relevant conduct and the offense of conviction," this factor weighs in favor of finding that the two offenses in question were part of the same course of conduct. *Id.*

Finally, with regard to the temporal factor, "[w]e have 'generally used a year as the benchmark.'" *Rhine*, 583 F.3d at 886–87 (quoting *United States v. Booker*, 334 F.3d 406, 414 (5th Cir. 2003)); *see also United States v. Ocana*, 204 F.3d 585, 590 (5th Cir. 2000) ("It is well settled in this circuit that offenses which occur within one year of the offense of conviction may be considered relevant conduct for sentencing."). Since the two offenses occurred within this benchmark period—approximately eleven months apart—this factor weighs in favor of finding that they were part of the same course of conduct.

Because all three factors weigh in favor of finding that the March 2011 offense was part of the same course of conduct as the offense of conviction, the district court did not clearly err in determining that the March 2011 offense was relevant conduct under the Guidelines.

AFFIRMED.

---

conduct' and continued through to the offense of conviction)." *Id.* at 891. To the extent that the "multiple trips" that Finley described to Lubecke occurred prior to the March 2011 incident as Finley suggests, this case would be one of the cases described in *Rhine* in which the prior drug trafficking demonstrates "a specific 'course of conduct' [that] began before the 'relevant conduct' and continued through to the offense of conviction." *Id.* Therefore, Finley's statement to Lubecke that he made "multiple trips" to South Texas to purchase drugs is evidence that he regularly and repeatedly committed such offenses regardless of whether they occurred before or between the two offenses in question.

11