# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 15, 2013

Lyle W. Cayce
Clerk

No. 11-41365

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

ARNOLDO GONZALEZ-GARCIA,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, SMITH, and ELROD, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

In violation of *Miranda v. Arizona*,[1] a federal agent questioned Arnoldo Gonzalez-Garcia regarding possible drug activity in a nearby house. Gonzalez confessed that he was guarding marijuana in the residence and requested an attorney. Agents then sought and obtained his consent to search the house, entered with his assistance, and discovered the marijuana. We consider whether the district court erred in denying Gonzalez's motion to suppress the drugs.

---

[1] 384 U.S. 436 (1966).

No. 11-41365

## I.

Federal agents suspected that criminal activity was afoot at a house in McAllen, Texas and began surveilling the residence. Agents observed several details that they believed to be suggestive of drug activity, including that the house's yard was "unkempt," several vehicles in front of the house had temporary license plates, and persons at the house stored mini-vans in the house's garage while leaving "luxury vehicles" in the driveway.

Agents later observed a black Mercedes-Benz drive away from the residence soon after a passenger "put[] . . . what appeared to be luggage" in the vehicle. Agents followed the Mercedes, which eventually pulled into a Target parking lot. Its driver made a brief phone call, drove out of the lot, and sped off—causing the agents to abandon their pursuit.

Around the same time as the phone call, Gonzalez left the residence. He walked quickly away from the house, "looking back and forth . . . like he was nervous." ICE agent Michael Ramirez drove past Gonzalez, parked, and exited his pickup truck.[2] Ramirez approached Gonzalez and asked whether Gonzalez was in the country legally. Gonzalez admitted that he was not. Ramirez then handcuffed him, placed him in the front passenger seat of the truck, and drove toward the house.

During the drive, Ramirez began a "conversation" with Gonzalez. Ramirez asked if Gonzalez "was guarding drugs in [the] house;" Gonzalez responded, "yes." Ramirez asked, "[s]o to be clear, there are drugs in that house right now;" Gonzalez again responded, "yes." At that time, Gonzalez—sitting, in handcuffs, in a law-enforcement vehicle—had not received *Miranda* warnings. The government concedes that the district court properly suppressed these statements.

---

[2] ICE denotes Immigration and Customs Enforcement.

About the same time as Gonzalez's second "yes," Ramirez claims to have said "hold on" and reached for his *Miranda* rights card. Ramirez decided not to read Gonzalez his *Miranda* rights, however, because as he reached for his *Miranda* card, Gonzalez requested a lawyer. Soon after the request, case agent Michael Renaud approached Ramirez's car window.

Ramirez informed Renaud that Gonzalez desired counsel. Renaud then asked Ramirez to inquire whether Gonzalez would consent to a search of the house. According to Ramirez, the following transpired: Ramirez asked Gonzalez for consent. Gonzalez did not respond and "looked like he was thinking about it." Perhaps a minute later, Ramirez asked again. Gonzalez responded, asking, "Well, what can you do for me? What's in it for me?" After Ramirez said he might advise the prosecutor of Gonzalez's cooperation, Gonzalez "just kind of looked like he was deciding, you know, kind of a sigh here or there." Ramirez again sought consent; Gonzalez again asked, "What can you do for me?;" and Ramirez again mentioned advising the prosecutor of Gonzalez's cooperation.[3] A few seconds later, Ramirez stepped out of the truck and Renaud entered. Minutes later Ramirez reentered the truck with "the understanding that [Gonzalez] was still thinking about it." Ramirez then asked, "Okay, we need to know, Mr. Gonzalez, will you consent to search the house?" After Gonzalez responded, "yes," he signed a consent form that Ramirez had read to him.

Agent Renaud believed that he and Ramirez spent five to seven minutes seeking permission to search. He testified at a suppression hearing that Gonzalez was "not nervous, not afraid, [and] not anxious" when he consented. After consenting, Gonzalez turned over a key to the house and instructed agents on how to open the door. A search of the house revealed bundles of marijuana—about 2,043 kilograms, or roughly two-and-one-quarter tons, in all.

---

[3] Ramirez denied telling Gonzalez that "if he didn't cooperate . . . he was going to be spending a whole lot of time in jail" or that Ramirez "w[as] going to get into the house. . . one way or the other."

Gonzalez was charged in a two-count indictment with possession with intent to distribute a controlled substance[4] and conspiracy to do the same.[5] He pleaded not guilty to the conspiracy count and moved to suppress "[a]ny statements or admissions made by the Defendant at the time of his arrest or [the] search . . . and anything arising therefrom," as well as all statements, testimony, and physical evidence discovered "as a direct result and exploitation of said arrest and search."

The district court held a hearing on the motion to suppress. The court suppressed Gonzalez's admissions that he was guarding marijuana in the house. And while the court concluded that Gonzalez "knowingly and voluntarily" gave agents consent to search the residence, it left open whether he "[could] legally give consent after" requesting counsel. The hearing continued a few weeks later, at which point the court deemed Gonzalez's consent "constitutionally obtained." Immediately thereafter, Gonzalez conditionally pleaded guilty to the possession count, reserving his right to appeal the partial denial of his motion to suppress. The district court accepted his plea, and upon the government's motion, dismissed the conspiracy charge. After sentencing, Gonzalez timely appealed.

## II.

We review de novo the legal conclusions underlying a district court's denial of a motion to suppress.[6] We review factual findings for clear error, viewing

---

[4] *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A).

[5] *See id.* §§ 846, 841(a)(1), 841(b)(1)(A).

[6] *United States v. Santiago*, 410 F.3d 193, 197 (5th Cir. 2005).

evidence in the light most favorable to the prevailing party.[7] Whether consent was given voluntarily is a question of fact.[8]

It is not entirely clear what defendant intends to argue on appeal. We perceive two theories blended in his opening and only brief. The first focuses on a possible *Edwards* violation: the fruits of the consent search must be suppressed, the argument goes, because consent was obtained only after the defendant requested counsel.[9] This theory corresponds with the question left open temporarily by the district court. The second theory focuses on the conceded *Miranda* violation; it reasons that agents used Gonzalez's unlawfully obtained statements to obtain his consent, rendering it involuntary. After a brief exposition of background principles, we consider each theory in turn.

## III.

Our analysis begins with the Fifth Amendment, which proscribes compelled self-incrimination.[10] In *Miranda v. Arizona*, the Supreme Court set out several prophylactic measures to combat the "'inherently compelling pressures' of custodial interrogation."[11] These so-called *Miranda* rights may be waived "knowingly and intelligently."[12]

---

[7] *Id.* ("Where a district court's denial of a suppression motion is based on live oral testimony, the clearly erroneous standard is particularly strong because the judge had the opportunity to observe the demeanor of the witness.").

[8] *United States v. Solis*, 299 F.3d 420, 436 (5th Cir. 2002).

[9] *Edwards v. Arizona*, 451 U.S. 477 (1981).

[10] U.S. CONST. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself.").

[11] *Maryland v. Shatzer*, 130 S. Ct. 1213, 1219 (2010) (quoting *Miranda*, 384 U.S. at 467). Interrogation need not take place at a police station to be custodial. *See Orozco v. Texas*, 394 U.S. 324, 327 (1969) (defendant's bedroom).

[12] *Miranda*, 384 U.S. at 475 (citing *Johnson v. Zerbst*, 304 U.S. 458 (1938)); *accord Shatzer*, 130 S.Ct. at 1219; *but cf. Berghuis v. Thompkins*, 130 S. Ct. 2250, 2262 (2010) ("Where the prosecution shows that a *Miranda* warning was given and that it was understood

5

The Court later extended *Miranda* in *Edwards v. Arizona*.[13] As relevant here, *Edwards* provides that "when an accused has invoked his right to have counsel present during custodial interrogation . . . [he] is not subject to further interrogation by the authorities until counsel has been made available to him."[14] This "prophylactic" rule is designed to "prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights" and protects "a suspect's voluntary choice not to speak outside his lawyer's presence."[15] The rationale undergirding *Edwards* is that "once a suspect indicates that 'he is not capable of undergoing [custodial] questioning without advice of counsel,' 'any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is . . . not the purely voluntary choice of the suspect.'"[16]

Our inquiry also draws on the Fourth Amendment, which proscribes unreasonable searches and seizures.[17] A warrantless search is per se unreasonable, subject to certain exceptions.[18] The only exception pertinent here is "a search that is conducted pursuant to consent."[19] Consent to search need only be given voluntarily; unlike the knowing waiver of *Miranda* rights, voluntariness does not "require proof of knowledge of a right to refuse."[20]

---

by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent.").

[13] 451 U.S. 477 (1981).

[14] *Id.* at 484–85.

[15] *Montejo v. Louisiana*, 556 U.S. 778, 787 (2009) (citation omitted) (internal quotation marks omitted).

[16] *Shatzer*, 130 S.Ct. at 1219 (quoting *Arizona v. Roberson*, 486 U.S. 675, 681 (1988)).

[17] U.S. CONST. amend. IV.

[18] *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)).

[19] *Id.*

[20] *Id.* at 234; *see also id.* at 248; *United States v. Watson*, 423 U.S. 411, 424 (1976).

**A.**

The first question is whether the district court should have suppressed the seized marijuana as the fruit of an *Edwards* violation. We have suggested that a request for consent is not an "interrogation" capable of violating the *Edwards* rule.[21] The issue need not detain us, however, because even if there was an *Edwards* violation, suppression would be inappropriate.

The critical point here is that Gonzalez seeks only suppression of marijuana. A violation of the prophylactic *Miranda* rule does not require "suppression of the [nontestimonial] physical fruits of the suspect's unwarned but voluntary statements."[22] Nor does a violation of *Edwards*'s "second layer of prophylaxis."[23] Because the marijuana seized is physical, nontestimonial evidence, an *Edwards* violation itself would not justify suppression.[24]

Gonzalez's reliance on *United States v. Green* is misplaced.[25] Green was convicted "on a charge of felon in possession of firearms in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2)."[26] He sought to suppress "evidence of his disclosure

---

[21] *See United States v. Stevens*, 487 F.3d 232, 242, 243 n.3 (5th Cir. 2007); *see also Montejo*, 556 U.S. at 795 (explaining that *Edwards* does not apply to "noninterrogative types of interactions between the defendant and the State"); *cf. United States v. Daughenbaugh*, 49 F.3d 171, 174 (5th Cir. 1995) ("A handwriting sample is nontestimonial evidence beyond the scope of the right against self-incrimination. The bare request for a sample therefore does not implicate *Edwards*.").

[22] *United States v. Patane*, 542 U.S. 630, 634 (2004) (plurality opinion); *id.* at 645 (Kennedy, J., concurring) ("nontestimonial").

[23] *McNeil v. Wisconsin*, 501 U.S. 171, 176 (1991); *see United States v. Cannon*, 981 F.2d 785, 789 (5th Cir. 1993) ("We have held that the derivative evidence doctrine is not triggered by an *Edwards* violation."); *United States v. Cherry*, 794 F.2d 201, 208 (5th Cir. 1986).

[24] We have no occasion to consider the effect of an *Edwards* violation after formal proceedings against a defendant have begun.

[25] 272 F.3d 748 (5th Cir. 2001).

[26] *Id.* at 749.

of the location of two locked cases containing firearms and his unlocking the combination locks on these cases."[27] We held that there was "no serious question but that Green's actions in disclosing the locations and opening the combination locks of the cases containing firearms were testimonial and communicative in nature;" they "disclosed Green's knowledge of the presence of firearms in these cases and of the means of opening these cases."[28] We did *not* hold, however, that the *guns* discovered were inadmissible. *Green* concerned only evidence of the defendant's testimonial acts and is therefore inapposite.[29] Accordingly, we turn to Gonzalez's alternative theory.[30]

### B.

The final issue is whether the conceded *Miranda* violation renders involuntary Gonzalez's subsequent consent to the search. Gonzalez appears to argue that the government used his unwarned confession to obtain his consent, making his consent involuntary. No one disputes that if his consent was involuntarily given, the marijuana must be suppressed.[31]

---

[27] *Id.* at 752.

[28] *Id.* at 753.

[29]  *Id.* at 752.

[30]  Gonzalez further hints that we should suppress *the statement granting consent* pursuant to *Edwards* and—having suppressed his consent—suppress the contraband uncovered during a warrantless search. We cannot do so. *See Stevens*, 487 F.3d at 243 ("The failure of officials to give *Miranda* warnings before asking for consent does not prohibit the use of a defendant's in-custody statements granting consent to a search."); *cf. Cherry*, 794 F.2d at 208 (refusing to exclude murder weapon, obtained during consent search, that was fruit of an *Edwards* violation).

[31] Without consent, the warrantless search was unlawful. If the search was unlawful, the taint of that illegality had not "dissipate[d]" by the time agents found the marijuana. *Wong Sun v. United States*, 371 U.S. 471, 487 (1963) (citation omitted) (internal quotation marks omitted). The government does not argue that discovery of the marijuana was inevitable.

Gonzalez appears to argue that consent is coerced *whenever* police use an unwarned statement to obtain consent. But a categorical rule is inconsistent with the multi-factor, holistic approach to assessing voluntariness that this Court and the Supreme Court have endorsed.[32] Gonzalez's position appears to be an analog of the "cat out of the bag" theory rejected in *Oregon v. Elstad*.[33] Just as a confession following an unwarned confession may be voluntary, consent following an unwarned confession may be voluntary.[34] Accordingly, this argument is without force.[35]

* * *

The district court found that Gonzalez voluntarily consented to the search of a house containing marijuana. His consent was not automatically involuntary merely because his *Miranda* rights were violated. And even if government agents violated *Edwards* when they sought his consent, that *Edwards* violation would not suffice to justify suppression of the marijuana. We therefore AFFIRM the judgment of conviction that is based on the partial denial of Gonzalez's motion to suppress.

---

[32] *See Schneckloth*, 412 U.S. at 227 (explaining that voluntariness "is a question of fact to be determined from the totality of all the circumstances."); *Watson*, 423 U.S. at 424 (extending *Schneckloth* to custodial interrogation); *Solis*, 299 F.3d at 436 n.21 (describing six factors). As Gonzalez did not cite, let alone discuss, the factors relevant to a voluntariness analysis in his opening brief, we will not address them. *See United States v. Pompa*, 434 F.3d 800, 806 n.4 (citing FED. R. APP. P. 28).

[33] 470 U.S. 298, 302 (1985).

[34] This is so notwithstanding the pressures inherent in custodial interrogation. *See Patane*, 542 U.S. at 634, 635 n.1 (plurality opinion); *Elstad*, 470 U.S. at 303, 307, 315–16.

[35] Gonzalez does not argue that exploitation of illegally obtained evidence *could affect* whether consent is given voluntarily, and that the district court overlooked that possibility.