**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 14a0699n.06

Case No. 13-4248

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Sep 08, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 18, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) | |
| LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, et al., | ) ) ) | |
| Defendants-Appellees. | ) | |

BEFORE: ROGERS and COOK, Circuit Judges; MURPHY, District Judge[*]

PER CURIAM. This case involves a contract dispute between two unions concerning the right to do particular jobs at construction sites. The International Union of Operating Engineers, Local 18 (the "Engineers")—a local chapter of the International Union of Operating Engineers ("IUOE")—alleges that members of the Laborers' International Union of North America ("LIUNA") and its local affiliates (collectively, the "Laborers") performed work that the controlling agreement between the two unions—the "Memorandum of Understanding"— allocates to the Engineers, breaching the terms of that agreement. We reverse the district court's

---

[*]The Honorable Stephen J. Murphy, III, United States District Judge for the Eastern District of Michigan, sitting by designation.

12(b)(6) dismissal, concluding that the district court erred in finding that the agreement did not meet the criteria necessary to allege an enforceable contract.

As a threshold matter, we reject the Laborers' contention that the National Labor Relations Board ("NLRB") has exclusive jurisdiction over this case. Section 301 of the Labor Management Relations Act ("LMRA") grants district courts the power to entertain "[s]uits for violation of contracts between . . . labor organizations," 29 U.S.C. § 185(a), covering any agreement that is "significant to the maintenance of labor peace between" such unions. *Retail Clerks Int'l Ass'n, Local Unions Nos. 128 & 633 v. Lion Dry Goods, Inc.*, 369 U.S. 17, 28 (1962); *see also Equitable Res., Inc. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 621 F.3d 538, 550 (6th Cir. 2010) ("[M]atters primarily of contract interpretation . . . remain within the federal courts' § 301 jurisdiction." (internal quotation marks and citation omitted)). But when a dispute involves "primarily representational" matters under Sections 7 or 8 of the LMRA—which "regulate the vital, economic instruments of the strike and the picket line"—the NLRB has exclusive jurisdiction. *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 241 (1959).

This case presents primarily contractual issues and thus belongs in federal court. The Engineers press only their rights under the Memorandum. The complaint, "seeking damages for breach of an agreement between labor organizations," makes no reference to sections 7 or 8 of the LMRA, "unlike a traditional *Garmon* preemption claim." *Int'l Bhd. of Elec. Workers v. Trafftech*, 461 F.3d 690, 694 (6th Cir. 2006). Rather, this case resembles those involving primarily contractual issues. *See, e.g.*, *Int'l Bhd. of Boilermakers, Iron Ship Builders,*

*Blacksmiths, Forgers & Helpers v. Olympic Plating Indus.*, 870 F.2d 1085, 1089 (6th Cir. 1989) (federal jurisdiction proper when claims interpreted a union's constitution).

Turning to the merits, the district court dismissed the complaint because, in its view, the Memorandum did not include the typical indicia of an enforceable contract under Ohio law. We review de novo the district court's dismissal, *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995), asking whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

A claim arising under Section 301 is "essentially a breach of contract allegation," *Schreiber v. Philips Display Components Co.*, 580 F.3d 355, 363 (6th Cir. 2009), and we apply "traditional rules for contractual interpretation . . . as long as their application is consistent with federal labor policies." *UAW v. Yard-Man, Inc.*, 716 F.2d 1476, 1479 (6th Cir. 1983). The parties here dispute two key contractual elements: (1) manifestation of mutual assent; and (2) consideration. The Engineers' complaint alleges both elements.

Regarding mutual assent, the Memorandum unambiguously provides that members of the respective unions "will" or "shall" perform certain types of work. *See* 1 Williston on Contracts § 1:2 (4th ed.) ("A promise is a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promise in understanding that a commitment has been made.").

The Laborers contend that the Memorandum cannot constitute an enforceable agreement because it omits many "traditional" contract elements such as the words "agreement" or

"contract," various standard provisions (such as a choice of law provision), and language "bind[ing] local unions, district councils, employers, or project owners." But "[n]o form of words is necessary to create a promise or covenant; all that is essential is that on a fair interpretation, it appears that the purported promisor has agreed to do the act in question." 13 Williston on Contracts § 38:14.

The Laborers' also maintain that the Memorandum is not enforceable against the local affiliates. Yet the complaint plausibly alleges that LIUNA acted as an agent of the Laborers in negotiating the Memorandum. Citing LIUNA's constitution, the complaint alleges that LIUNA "is authorized to establish, declare, decide and enforce all matters of policy for and on behalf of . . . its subordinate bodies and members." Moreover, the Memorandum's division of duties among the "members" of the two international unions suggests that LIUNA in fact exercised this authority. The allegation that "the International Unions intended that their local affiliates would benefit from, and be bound by," the Memorandum is thus plausible, and the Memorandum may plausibly be interpreted to grant the respective international chapters the authority to settle jurisdictional disputes on the local affiliates' behalf.

The Laborers also challenge the Memorandum's enforceability for want of consideration, noting that it contains no language "agree[ing] to forego [sic] certain work." Yet we can infer that each union intended to agree to forgo performing work that the Memorandum allocates to the other—the bargained for benefits of the jurisdictional agreement—because the Memorandum's division of labor would be meaningless otherwise. *See Perlmuter Printing Co. v. Strome, Inc.*, 436 F. Supp. 409, 414 (N.D. Ohio 1976); *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002).

Last, the Laborers ask us to affirm on the alternate ground that the Engineers lack standing as a "third-party beneficiary" to initiate this action. As already explained, however, the Engineers allege that their international chapter intended to enter the Memorandum on their behalf, conferring rights (as well as obligations) on the Engineers. Because any "principal can enforce a contract made by the agent," 12 Williston on Contracts § 35:46, the Engineers may bring this action.

We REVERSE and REMAND for proceedings consistent with this opinion.