# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-41174

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

LUIS ALBERTO AVILA-HERNANDEZ, also known as Cua Cua,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

December 6, 2016

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:08-CR-1751-8

Before WIENER, CLEMENT, and HIGGINSON, Circuit Judges.

PER CURIAM:\*

Luis Avila-Hernandez ("Avila") was tried and convicted of one count of conspiracy to kidnap and one count of kidnapping. The district court sentenced Avila to life imprisonment and a five-year term of supervised release for each count, to run concurrently. Avila now appeals the district court's denial of his motion to suppress incriminating statements. We AFFIRM the judgment of the district court.

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-41174

I

The Federal Bureau of Investigation ("FBI") and Texas Department of Public Safety ("DPS") began a joint investigation into kidnappings near the Rio Grande Valley. A witness identified Jose Antonio Castillo ("Castillo"), Avila, and others as involved in a kidnapping. Sergeant Alfredo Barrera, Jr. ("Sergeant Barrera"), an agent with the DPS Criminal Investigative Division, received information that Castillo "was possibly back in the area" and staying with his sister, Laura Castillo ("Laura"). Sergeant Barrera also had information that "possibly other individuals that were involved in the kidnappings . . . might be staying at the house again."

There was an outstanding warrant for Castillo's arrest, which Sergeant Barrera had in his possession. He contacted DPS Trooper John P. Arevalo ("Trooper Arevalo") because Sergeant Barrera wanted to bring a marked unit with uniformed police officers to Laura's house. Sergeant Barrera, Trooper Arevalo, FBI Supervisory Special Agent Daniel Delgado ("Agent Delgado"), and other DPS officers and FBI agents (collectively, "the officers") went to Laura's house to arrest Castillo. The officers arrived at Laura's house after midnight.

Trooper Arevalo knocked and Laura answered the door. Trooper Arevalo asked Laura if Castillo was inside the house, and Laura told him that Castillo was not there. She told Trooper Arevalo that the only people inside the house were her, her children, and her boyfriend, "Mario Lopez." Trooper Arevalo then told Laura that he had information that Castillo was inside the house, and asked if the officers could search the house. When Laura told him that "the kids were asleep," Trooper Arevalo responded that the officers would not "make that much noise, just go in there because [they] have information and [they] have a job to do." Laura then "gave . . . consent" for the officers to search the house.

2

No. 14-41174

The officers began to search the house, and Trooper Arevalo encountered a man "underneath the covers" in the master bedroom. This man would later be identified as Avila. When Trooper Arevalo asked Avila his name, he responded in Spanish. Avila told the officers that his name was "Mario Lopez." Agent Delgado knew that "Mario Lopez" was not Avila's name through his "investigation and through people who were assisting" in the investigation.

Agent Delgado asked Avila "if he had any form of identification" and "if he was legally in the [United States]." Avila admitted to the officers that he was in the United States illegally. Agent Delgado took Avila outside, and Trooper Arevalo "continued to search" for Castillo with Laura. The officers then transported Avila to the closest United States Border Patrol Station ("Border Patrol Station") to determine his alienage. After Avila was processed, information "came back with a name of somebody who had been previously deported using the name of Luis Alberto Avila-Hernandez." Avila then admitted that his name was not "Mario Lopez."

Sergeant Barrera read Avila his *Miranda* rights in Spanish. Avila signed the form, waiving his *Miranda* rights. Sergeant Barrera explained to Avila that they were interested in the kidnapping of Daniel Ramirez, Jr., and that they "had a lot of information." Avila told the officers "that he was involved, he knew what happened, but that he was just a lookout at the time." Avila then made additional incriminating statements regarding the kidnapping.

A grand jury indicted Avila and five others on seven felony counts of conspiracy and kidnapping. Avila pleaded "not guilty" and filed a motion to suppress the incriminating statements he made at the Border Patrol Station. After receiving stipulations, live testimony, and other evidence at a suppression hearing, the district court denied Avila's motion to suppress his

3

No. 14-41174

statements.[1] Avila was tried and found guilty of conspiracy to kidnap and kidnapping.

## II

Upon review of a district court's denial of a motion to suppress evidence, this court reviews findings of fact for clear error and conclusions of law de novo. *United States v. Ortiz*, 781 F.3d 221, 226 (5th Cir. 2015). "The district court's ruling should be upheld 'if there is any reasonable view of the evidence to support it.'" *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010) (quoting *United States v. Gonzalez*, 190 F.3d 668, 671 (5th Cir. 1999)). "The proponent of a motion to suppress has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights." *United States v. Iraheta*, 764 F.3d 455, 460 (5th Cir. 2014) (quoting *United States v. Kelley*, 981 F.2d 1464, 1467 (5th Cir. 1993)).

## III

Avila asks this court to reverse the district court's denial of his motion to suppress, arguing that Laura's consent to search was involuntary and that Avila was unlawfully detained.[2]

## A

The officers had an arrest warrant for Castillo, but they did not have a search warrant for Laura's house. A search without a warrant "is per se unreasonable, subject to certain exceptions." *United States v. Gonzalez-Garcia*,

---

[1] The district court ruled from the bench and did not issue a written ruling explaining its decision.

[2] Although the record potentially reveals an issue of Avila's standing to contest the search of Laura's home, the government has waived any argument on this point. *See United States v. Ponce*, 8 F.3d 989, 994 (5th Cir. 1993) ("[W]hen the government fails to challenge facts from which it could reasonably infer a defendant's standing, it waives the issue for purposes of appeal.").

No. 14-41174

708 F.3d 682, 686 (5th Cir. 2013). The relevant exception here is the consent exception: "a search conducted pursuant to a valid consent is constitutionally permissible." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). The government has the burden of proving that the consent exception applies. *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968).

The consent exception requires that the government show "(1) effective consent, (2) given voluntarily, (3) by a party with actual or apparent authority." *Scroggins*, 599 F.3d at 440 (citing *United States v. Gonzales*, 121 F.3d 928, 938 (5th Cir. 1997)). The uncontested evidence in the record shows that Laura consented to the search of her house. Avila does not argue that Laura's consent was ineffective or that she did not have actual authority to consent to the search. Avila argues only that Laura did not *voluntarily* consent to the search of her home.

Whether consent is voluntary is a question of fact "determined from the totality of the circumstances surrounding the search." *United States v. Tompkins*, 130 F.3d 117, 121 (5th Cir. 1997). "The issue to be decided is whether, looking at all of the circumstances, the [person's] will was overborne." *United States v. Davis*, 749 F.2d 292, 294 (5th Cir. 1985). This court has set forth six factors that are "highly relevant" to the question of voluntariness to consent. *See United States v. Jenkins*, 46 F.3d 447, 451 (5th Cir. 1995) (quoting *United States v. Olivier-Becerril*, 861 F.2d 424, 426 (5th Cir. 1988)). But Avila does not address these factors in his brief. Avila instead suggests that Laura's consent was involuntary because Trooper Arevalo deceived Laura and because she acquiesced to the officers' "claim of authority to search via a warrant" for Castillo.

1

Avila does not argue that Laura did not know she could refuse to consent to the search, a factor "highly relevant" to voluntariness. *See Jenkins*, 46 F.3d

5

at 451. He instead argues, without citing to or explaining any relevant precedent,[3] that Laura's consent was involuntary because of "deceit and trickery." The district court did not address this argument when it denied Avila's suppression motion. But the district court made some relevant factual findings during the suppression hearing. The district court found that the officers knew it was "likely" that Avila was at Laura's house and that they "didn't tell [Laura] that they were looking for him also." Avila argues that this knowledge was enough to render Laura's consent involuntary through "deceit and trickery."

"The mere failure of the officers to give an encyclopedic catalogue of everything they might be interested in does not alone render the consent to search involuntary." *Davis*, 749 F.2d at 295. The dispositive question is whether "the government agent was found to have intentionally deceived the defendant by making false representations in order to induce consent." *Id.* at 297.

Laura's consent was not involuntary because of deceit. As in *Davis*, "all of the statements the officers made and the impressions they gave were true." *Id.* The district court found at the suppression hearing that the officers were looking for Castillo, that the officers believed that Castillo was at Laura's house, and that the officers "had information [Castillo] had been there prior to that." There is no evidence that Trooper Arevalo or any other officer told Laura that they were *only* looking for Castillo or that they intended to deceive her. Unlike in *Davis*, there is no evidence that Laura would have refused to consent to the search if the officers told her they were also looking for Avila or any other

---

[3] Avila appears to rely solely on *Bumper v. North Carolina*, 391 U.S. 543 (1968), to support his argument that Laura's consent was involuntary. But the Supreme Court in *Bumper* decided only that consent was not voluntary when it was obtained via the assertion of a search warrant. *Id.* at 550.

person involved in the kidnapping. *See id.* at 294. This court holds that the officers' "unrevealed knowledge" did not render Laura's consent involuntary.

### 2

Consent is involuntary if "it was coerced by threats or force, or granted only in submission to a claim of lawful authority." *Schneckloth*, 412 U.S. at 233; *see also Bumper*, 391 U.S. at 550. Avila argues that the officers entered Laura's house "through the claim of authority to search via a warrant" for Castillo. But Avila fails to cite to any evidence in the record that any law enforcement officer told Laura that there was a warrant for Castillo. This court holds that Laura's consent to search was voluntary.

### B

Avila's argument that he was unlawfully detained at the Border Patrol Station is an extension of his argument that Laura's consent to search her house was involuntary. Avila does not argue that his detention was unlawful even if Laura's consent was voluntary. "Without a poisonous tree, there can be no tainted fruit." *United States v. Rios-Davila*, 530 F. App'x 344, 348 (5th Cir. 2013). Because Laura's consent to search was voluntary, the officers had the right to perform a protective sweep. The officers then had probable cause to detain Avila because he admitted he was in the country illegally.

In Avila's statement of the issues, he asserts that "his subsequent statement was involuntarily provided." But Avila waived any argument that his *Miranda* waiver or subsequent statements were involuntary by failing to adequately make that argument in his brief. *See Scroggins*, 599 F.3d at 447. Because Avila's detention was lawful, his statements at the Border Patrol Station are not subject to the exclusionary rule and the district court properly denied Avila's motion to suppress.

### IV

The judgment of the district court is AFFIRMED.