NOT DESIGNATED FOR PUBLICATION

No. 115,999

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

AARON T. CESSNA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID J. KAUFMAN, judge. Opinion filed January 12, 2018. Affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before PIERRON, P.J., ATCHESON, J., and WALKER, S.J.

PER CURIAM: A jury sitting in Sedgwick County District Court convicted Defendant Aaron T. Cessna of two counts of sexual exploitation of a child, aggravated indecent liberties with a child, and aggravated criminal sodomy. The district court later imposed a controlling sentence on Cessna of life with parole eligibility only after he has served 618 months. On appeal, Cessna challenges both the convictions and the resulting sentence. We find no grounds warranting relief and affirm.

1

On March 19, 2014, the Sedgwick County District Attorney's office charged Cessna with nine counts of sexual exploitation of a child. Earlier that month, Quang Minh Nguyen, an employee at Octapharma Plasma, was going through the lost and found at the business and discovered a black and red cell phone that had been there for approximately three weeks. Quang attempted to turn the phone on to determine its owner, but the phone had a dead battery. Quang removed the memory card from the phone, took it home, and placed it into a different phone in an attempt to determine the phone's owner. The memory card contained images of child pornography that alarmed Quang. The memory card also contained a business card for Cessna. Quang deduced that Cessna was a customer at the plasma center. Quang turned the memory card over to his manager.

Loan Nguyen, was the assistant manager at Octapharma Plasma that Quang turned the memory card over to. Loan confirmed that Cessna was a customer of the plasma center. Loan turned the phone and the memory card over to the Wichita police. Officers obtained a search warrant for the black and red cell phone. Located on the cell phone was a video in which Cessna masturbates and performs oral sex on a male child about one-year old. Other videos on the phone depicted an adult male engaged in sexual intercourse with a girl under the age of 10 and an adult male receiving oral sex from a girl under the age of 10.

Officers contacted Cessna on March 17, 2014, telling him they had located property belonging to him, and asked him to come to the station. Officers ended up transporting Cessna to the station after he agreed to come. Detective Kevin Brown with the Wichita Police Department Exploited/Missing Child Unit spoke with Cessna. Cessna was Mirandized and signed a form acknowledging his rights. Cessna acknowledged "having a phone similar to" the red and black cell phone and said he had last seen it in his

truck. Cessna acknowledged giving plasma at the plasma center where the cell phone was found.

When Cessna was told about the video depicting himself engaged in sex acts with the male child, Cessna asked to speak to his attorney. The interview ended at that point. Before leaving the interrogation room, Brown asked Cessna if he wanted anything to eat or drink. Cessna asked for water. Several minutes later, Brown returned with the water. Brown then asked Cessna if he could search the cell phone Cessna brought with him to the police station. Cessna orally consented to the search. Brown then prepared a written waiver of Cessna's rights in regard to the search with Cessna. Cessna signed the waiver. The second cell phone contained various images of child pornography.

On April 15, 2014, the State amended the charges to two counts of felony sexual exploitation of a child, off-grid sexual exploitation of a child, off-grid aggravated criminal sodomy, and off-grid aggravated indecent liberties with a child. Following the preliminary hearing on February 12, 2015, the district court bound Cessna over on the five charges. On August 19, 2015, Cessna filed a motion to suppress. Cessna sought the suppression of "any statements or actions made by" himself after he invoked "his right to counsel." The State filed its response to the motion on August 26, 2015. The State claimed that "[t]he waiver to search [wa]s non-testimonial in nature." The State filed another amended complaint on August 28, 2015, changing the charges to two felony counts of sexual exploitation of a child, and one count each of off-grid sexual exploitation of a child, off-grid aggravated criminal sodomy, and off-grid aggravated indecent liberties with a child.

The district court held a hearing on the motion to suppress, along with other pretrial motions, on August 28, 2015. The district court took the motion under advisement before ultimately denying it on the first day of the trial, on August 31, 2016. The district court explained its reasoning for the denial at a hearing following the trial on

3

September 3, 2015. The district court based its decision to deny the suppression motion on *State v. Schultz*, 289 Kan. 334, 212 P.3d 150 (2009).

Cessna's jury trial occurred August 31, 2015-September 1, 2015. During trial, the State dismissed one count of felony sexual exploitation of a child, leaving one count each of off-grid aggravated criminal sodomy, off-grid aggravated indecent liberties with a child, off-grid sexual exploitation of a child, and felony sexual exploitation of a child. At trial, the State called Breanna Rose as a witness. Rose was the mother of the child Cessna performed sex acts with in the cell phone video. Rose, who was shown the video by Det. Brown, testified that both Cessna and her son were the two individuals in the video.

On cross-examination, Rose testified that the memory (SD) card from the first cell phone was given to Cessna by James Vansickle. When Cessna's lawyer inquired into a possible relationship Rose had with Vansickle, the State objected on relevance grounds. Outside of the presence of the jury, the district court heard arguments on the objection. Cessna's lawyer claimed the relevance of the question was "to provide an alternative person to point blame at." When asked if the defense had to do with a third party being the perpetrator in the video, Cessna's attorney confirmed that could be a possibility. The district court asked again if the defense was trying to establish if "James Vansickle could be the person on the video; correct?" Cessna's attorney responded: "Yes, Your Honor." A lunch recess was then taken. Following the recess, the district court again asked Cessna's lawyer to confirm his position for relevance of a possible relationship between Rose and Vansickle. Cessna's lawyer stated: "Based on Ms. Rose's testimony that Mr. Vansickle had provided Mr. Cessna with the SD card or the memory card for the red phone, I was just simply trying to tie in potential third-party identification of another potential suspect in this case." The district court sustained the State's objection.

Cessna was found guilty on all four counts. On December 22, 2015, Cessna filed a motion challenging the presentence investigation, a motion for a downward sentencing

4

departure, a motion for new trial and judgment of acquittal, and a motion for determination that the mandatory minimum sentences are unconstitutional. The district court denied the motion for new trial and judgment of acquittal and the motion challenging the presentence investigation.

A hearing on the remaining motions, along with sentencing occurred March 29, 2016. The district court denied both the constitutional challenge to mandatory minimums and the departure motion. Cessna received a life sentence for aggravated sodomy with parole eligibility after 618 months, 240 months for sexual exploitation of a child, a life sentence with parole eligibility after 25 years for aggravated indecent liberties, and 64 months for the other sexual exploitation charge. The district court ordered all of sentences served concurrently. Cessna has timely appealed.

ANALYSIS

*Motion to Suppress*

For the first time on appeal, Cessna contends the oral and written consents he provided for the search of one of his cell phones violated the Fourth Amendment to the United States Constitution because they were impermissibly coerced and, therefore, involuntary. In the district court, Cessna argued the consents were unenforceable because he had asserted his Fifth Amendment right against self-incrimination before Det. Brown asked for permission to search the cell phone. He also argued Det. Brown violated his Sixth Amendment right to counsel by requesting the consent after he had asked to speak to a lawyer. The district court rejected the Fifth and Sixth Amendment arguments.

We presume Cessna has tried to switch constitutional gears because his arguments based on the Fifth and Sixth Amendments run counter to generally accepted legal doctrine. See *Montejo v. Louisiana*, 556 U.S. 778, 786, 129 S. Ct. 2079, 173 L. Ed. 2d

955 (2009) ("[O]nce the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings," including postarraignment police questioning); *State v. Boorgie*, 273 Kan. 18, 30, 41 P.3d 764 (2002) (Sixth Amendment right to counsel attaches only after charges have been filed against defendant); *United States v. Calvetti*, 836 F.3d 654, 662-63 (6th Cir. 2016) (government agent's request for consent to search does not amount to questioning or interrogation within scope of Fifth Amendment, so efforts to obtain consent after uncharged suspect has requested lawyer isn't protected); *United States v. Gonzalez-Garcia*, 708 F.3d 682, 686-87 (5th Cir. 2013) (same); *United States v. Shlater*, 85 F.3d 1251, 1256 (7th Cir. 1996) (same).

In his appellate brief, Cessna suggests he asserted Fourth Amendment grounds to the district court in his motion to suppress. But our review of the record convinces us otherwise. The Fourth Amendment was not specifically raised, and the argument and the evidence at the suppression hearing did not directly address the voluntariness of Cessna's oral or written consent to search.

An appellate court is not obligated to consider issues raised for the first time on appeal, including those asserting constitutional challenges, and generally should refrain from doing so. See *State v. Leshay*, 289 Kan. 546, 553, 213 P.3d 1071 (2009). Given the issue and the record on appeal, we decline to depart from the general rule.

The voluntariness of any consent to search that a person provides during an encounter with law enforcement officers is an especially fact intensive inquiry. See, e.g., *State v. Hogan*, 45 Kan. App. 2d 715, 726-28, 252 P.3d 627 (2011). When a defendant files a motion to suppress, the State bears the burden of proving to the district court that the challenged evidence has been lawfully obtained. *State v. Wissing*, 52 Kan. App. 2d 918, Syl. ¶ 1, 379 P.3d 413, *rev. denied* 305 Kan. 1258 (2016). The State, therefore, is

6

entitled to fair notice that the voluntariness of a consent will be a contested issue in the district court so that it may fully address the point during the evidentiary hearing.

Here, the voluntariness of Cessna's consent to search was not raised as an issue—contested or otherwise—at the hearing on the motion to suppress or in the motion itself. The State did not present evidence or otherwise compile a hearing record directly dealing with consent. We have no way of knowing if the State would have offered additional evidence at the hearing bearing strictly on voluntariness. But we should not review the issue for the first time on appeal under the circumstances.

*Cross-examination of Victim's Mother*

Cessna contends he was denied his constitutional right to present a full and complete defense when the district court limited cross-examination of the mother of the one-year-old victim. Cessna maintains "relevant impeachment evidence" showing mother's bias and effort to protect Vansickle was excluded by the district court. The premise behind the line of questioning was the possibility that Vansickle committed at least some of the sex crimes depicted in the cell phone videos.

The district court sustained an objection to the testimony on the ground it was irrelevant. Generally speaking, all relevant evidence is admissible. K.S.A. 60-407(f). In turn, K.S.A. 60-401(b) defines relevant evidence as that having "'any tendency in reason to prove any material fact.' [Citations omitted.]" *State v. Page*, 303 Kan. 548, 550, 363 P.3d 391 (2015). The definition encompasses two elements: materiality and probativeness.

The elements call for different standards of appellate review. Evidence is material when the fact it supports is in dispute and is significant under the substantive law of the case. *State v. McCormick*, 305 Kan. 43, 47, 378 P.3d 543 (2016). The standard of review

7

for materiality is de novo. *Page*, 303 Kan. at 550. "'Evidence is probative if it furnishes, establishes, or contributes toward proof.'" *McCormick*, 305 Kan. at 47. Probativeness is reviewed for abuse of discretion. 305 Kan. at 47. A judicial action amounts to an abuse of discretion if (1) no reasonable person would take the view adopted by the district court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). A proffer of the substance of the evidence the district court has refused to admit is required for an appellate court to review the ruling. See K.S.A. 60-405; *State v. Garza*, 290 Kan. 1021, 1029, 236 P.3d 501 (2010).

Cessna's lawyer was clear that he asked the question in an effort to prove Vansickle may have been the perpetrator in the video. To pursue that sort of third-party defense, a defendant must offer some demonstrable and admissible factual basis to suggest the third party committed the crime. *State v. Burnett*, 300 Kan. 419, 431-32, 329 P.3d 1169 (2014). Without that showing, the district court may properly exclude any examination of witnesses about the third party, since the questioning would trade on speculation rather than on evidence. More broadly, of course, a lawyer must have a good-faith factual basis for pursuing a line of questioning. See *State v. Tosh*, 278 Kan. 83, Syl. ¶ 3, 91 P.3d 1204 (2004). Here, Cessna's lawyer could not satisfy that preliminary burden to open up the possibility Vansickle might have been the perpetrator in front of the jury. The district court ruled correctly on that aspect of the questioning.

Apart from that speculative theory, the record affords no indication that any relationship between the mother of the victim and Vansickle would in any way be relevant to Cessna's guilt. To that extent, the district court's ruling is likewise correct. But the district court did not appear to close down all additional inquiry about the possible relationship upon a good-faith showing of the nature of the relationship and its potential relevance. Cessna's lawyer, however, never returned to the purported relationship during the trial.

8

We find no error on this point.

*Jury Instruction and Nullification*

On appeal, Cessna contends the jury instruction on reasonable doubt improperly inhibited the jurors from rendering a nullification verdict of not guilty despite the evidence and the law. The district court used the standard language from PIK Crim. 4th 51.010 advising the jurors they "should find the defendant guilty" in the absence of any reasonable doubt that the State had proved the elements of the charged crimes. Cessna relies heavily on *State v. Smith-Parker*, 301 Kan. 132, 340 P.3d 485 (2014), although the decision is distinguishable because the challenged reasonable doubt instruction in that case used more directive language.

Various panels of this court have rejected the argument Cessna now makes regarding the standard language from PIK Crim. 4th 51.010. *State v. Allen*, 52 Kan. App. 2d 729, Syl. ¶ 5, 372 P.3d 432 (2016), *rev. denied* 306 Kan. ___ (April 17, 2017); *State v. McDuffie*, No. 113,987, 2017 WL 2617648, at *8-9 (Kan. App. 2017) (unpublished opinion), *rev. denied* 306 Kan. ___ (October 27, 2017); *State v. Spalding*, No. 114,561, 2017 WL 1433513, at *8 (Kan. App. 2017) (unpublished opinion), *rev. denied* 307 Kan. ___ (November 6, 2017); *State v. Bostic*, No. 115,114, 2017 WL 1382603, at *5-6 (Kan. App. 2017) (unpublished opinion), *rev. denied* 307 Kan. ___ (November 9, 2017); *State v. Campbell*, No. 114,167, 2016 WL 3407598, at *3-4 (Kan. App. 2016) (unpublished opinion) (collecting cases), *rev. denied* 306 Kan. ___ (April 26, 2017); *State v. Hastings*, No. 112,222, 2016 WL 852857, at *4-5 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. ___ (April 17, 2017); *State v. Jones*, No. 111,386, 2015 WL 4716235, at *5-6 (Kan. App. 2015) (unpublished opinion), *rev. denied* 303 Kan. 1080 (2016). We join them and find no error.

*Sentencing Issues*

• Cessna contends the district court improperly used his criminal history category of B in determining his earliest parole eligibility would come after he served 618 months of the life sentence he received on the off-grid conviction for aggravated criminal sodomy. He premises his argument on the statutory requirement that a defendant's criminal history will be used to establish a presumptive base sentence for a primary crime and will not then be applied to the sentences for other convictions for crimes charged in the same complaint, including off-grid crimes. With multiple convictions, an off-grid crime is not to be used as the primary crime. See K.S.A. 2016 Supp. 21-6819. So a defendant's criminal history does not figure in an off-grid sentence of life. That's true but beside the point.

Cessna's argument is built on a faulty premise. The argument treats the 618-month period as if it were a sentence, when it actually establishes how much of the off-grid life sentence Cessna must serve before he can be considered for parole or conditional release from prison. So the period is not a sentence but a trigger for parole eligibility. In turn, K.S.A. 2016 Supp. 21-6819 does not apply.

The district court correctly looked to and applied K.S.A. 2016 Supp. 21-6627, designating and governing certain sex crimes as off-grid offenses, including Cessna's conviction for aggravated criminal sodomy. Cessna's conviction is for an off-grid crime because of the victim's young age. As provided in K.S.A. 2016 Supp. 21-6627, defendants convicted of off-grid aggravated criminal sodomy typically will be parole eligible after serving either 25 years or 40 years in prison, depending on whether they have a previous conviction for a sex crime. Aggravated criminal sodomy is otherwise a severity level 1 person felony and, thus, subject to the sentencing grid and guidelines.

10

But K.S.A. 2016 Supp. 21-6627 contains an exception to the 25- and 40-year parole eligibility periods. If a defendant would serve a presumptive guideline sentence for the sex crime longer than 25 or 40 years based on his or her criminal history classification, then the length of that sentence becomes the parole eligibility period for the off-grid life sentence. See K.S.A. 2016 Supp. 21-6627(a)(2)(B); (b)(2)(B). The exception expressly requires consideration of the defendant's criminal history classification and has nothing to do with establishing a base sentence for a primary crime under K.S.A. 2016 Supp. 21-6819.

In turn, the exception avoids an anomaly in which a defendant with a significant criminal history convicted of an off-grid sex crime based on the victim's age might actually become eligible for conditional release from prison sooner than if he or she were convicted of the same sex crime under the sentencing guidelines against a much older victim. For a severity level 1 felony, Cessna would face a presumptive guidelines sentence of 554 to 618 months based on his criminal history classification of B.

The district court, therefore, correctly applied 21-6627(a)(2)(B) to require Cessna to serve 618 months or 51 and 1/2 years in prison before he becomes parole eligible on his life sentence. Cessna has shown no error.

• Cessna next contends that his past convictions amount to elements of his present crimes of conviction and, therefore, cannot be used to increase his punishment. To advance this argument, he cites *Apprendi v. New Jersey*, 530 U.S. 466, 494, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), for the proposition that if a fact or circumstance exposes a criminal defendant to a punishment greater than that authorized by the jury's guilty verdict alone, it is in the nature of an element of the offense. He then segues to K.S.A. 2016 Supp. 21-6810(d)(9) and argues it precludes the use of a past conviction to enhance a sentence if that conviction is an element of the crime of conviction. Cessna weaves those disparate threads together and pronounces them a cloak of invulnerability barring

11

the district court from considering his past convictions in determining his criminal history category.

The argument fails in each respect. Whatever the *Apprendi* Court meant by the passage Cessna draws on, it isn't what he asserts. The case stands for the proposition that a fact enhancing a criminal defendant's punishment beyond the statutorily prescribed sentence must be proved to a jury. But that rule does not apply to a past conviction used to increase a defendant's punishment for a present crime precisely because he or she is a criminal recidivist. *Apprendi*, 500 U.S. at 490. So using the fact of Cessna's past convictions to determine his criminal history category does not offend *Apprendi* or its constitutional underpinnings in the Sixth and Fourteenth Amendments to the United States Constitution.

As provided in K.S.A. 2016 Supp. 21-6810(d)(9), a defendant's past conviction should be excluded from his or her criminal history if it is used to enhance the crime of conviction from misdemeanor to a felony or to elevate the severity level. Likewise, a past conviction cannot be counted for criminal history purposes if it is a statutory element of the crime of conviction. K.S.A. 2016 Supp. 21-6810(d)(9). For example, unlawful possession of a weapon by a convicted felon necessarily requires the defendant to have been convicted of a felony. See K.S.A. 2016 Supp. 21-6304. That predicate felony cannot, then, be included in the defendant's criminal history, since it is a required part or element of the crime of conviction. Here, Cessna's past offenses have not been used in any of the ways outlined in K.S.A. 2016 Supp. 21-6810(d)(9) and, therefore, can be scored in determining his criminal history category. Cessna's sentencing argument fails.

• Cessna contends the district court's denial of his motion for a downward sentencing departure from the off-grid sentences to severity level 1 guidelines sentences, as permitted under K.S.A. 2016 Supp. 21-6627(d)(1), amounted to an abuse of judicial discretion. The district court may impose a downward departure sentence if it finds

12

"substantial and compelling reasons" to do so. The statute identifies a nonexclusive list of mitigating circumstances the district court may consider. K.S.A. 2016 Supp. 21-6627(d)(2).

The decision whether to grant a downward departure under K.S.A. 2016 Supp. 21-6627(d)(1) lies within the district court's sound discretion. *State v. Jolly*, 301 Kan. 313, 325, 342 P.3d 935 (2015) (considering K.S.A. 21-4643, predecessor to K.S.A. 2016 Supp. 21-6627). We have already outlined the appellate standard for assessing a district court's purported abuse of that discretion. See *Marshall*, 303 Kan. at 445.

At the sentencing hearing, the district court acknowledged Cessna's motion and the State's response and heard the arguments of the lawyers. In denying the motion in a bench ruling, the district court simply said, "I do not find substantial and compelling reasons to depart." The district court did not otherwise explain the decision. Neither the prosecutor nor Cessna's lawyer requested a more detailed explanation from the district court.

We think it plain from the trial record, the written submissions, and the argument that the district court was aware of the relevant factual circumstances and understood the legal framework within which it was to act. The only question, then, is whether other district courts would have ruled the same way given those circumstances. On appeal, Cessna says no. We disagree.

Cessna had two juvenile court adjudications for what would have been serious sex crimes if committed by an adult. Although Cessna was only 19 years old when he committed the crimes of conviction, they reflect a continuing pattern of especially abusive behavior. The crimes of conviction also involve multiple sex acts with multiple victims of very young ages—one of the victims was still an infant. The circumstances of the crimes reflect substantial reasons militating against a downward departure, especially

13

when weighed against the mitigating factors Cessna offered. His lawyer cited the somewhat conflicting grounds that Cessna had "meritorious claims" at trial but later expressed remorse. And the lawyer noted that Cessna had ongoing substance abuse problems. Cessna personally represented to the district court that he had been sexually abused outside the home as a young child. In his appellate brief, Cessna points out that the victims had not been beaten or otherwise physically injured apart from having to participate in the sex acts. Cessna's conduct can, nonetheless, be accurately described as depraved. See *State v. Mossman*, 294 Kan. 901, 920, 281 P.3d 153 (2012).

In sum, we cannot say the district court abused its discretion in finding the mitigating factors did not reflect substantial and compelling reasons for a downward departure, especially when viewed within the overall circumstances of the crimes of conviction. See *Jolly*, 301 Kan. at 324-25. We readily conclude other district courts would have ruled the same way.

• Cessna argues that the district court's use of his past convictions in determining an appropriate sentence impairs his constitutional rights because the fact of those convictions was not determined beyond a reasonable doubt by the jury. He relies on the *Apprendi* decision to support that proposition. He also acknowledges the Kansas Supreme Court has rejected that argument and has found the State's current sentencing regimen conforms to the Sixth and Fourteenth Amendments and satisfies the requirements of *Apprendi* with respect to the use of a defendant's past convictions in determining a presumptive statutory punishment. *State v. Fischer*, 288 Kan. 470, Syl. ¶ 4, 203 P.3d 1269 (2009); *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002). We, therefore, decline Cessna's invitation to rule otherwise, especially in light of the Kansas Supreme Court's continuing affirmation of *Ivory*. *State v. Pribble*, 304 Kan. 824, 838-39, 375 P.3d 966 (2016); *State v. Hall*, 298 Kan. 978, 991, 319 P.3d 506 (2014).

Having considered the various points Cessna has raised challenging both his convictions and his sentences, we find no grounds that would warrant relief.

Affirmed.